IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. JAMES C. MCFALL

**Appeal from the Criminal Court for Hawkins County**
**No. 7865      James E. Beckner, Judge**

_____

**No. E2001-02712-CCA-R3-CD**
**July 9, 2002**
_____

The Defendant, James McFall, was found guilty by a jury of violating a motor vehicle habitual offender order. The trial court subsequently sentenced the Defendant as a multiple, Range II offender to three years in the Department of Correction, to be served consecutively to a prior sentence. The Defendant now appeals, challenging the sufficiency of the indictment; the sufficiency of the evidence; the trial court's instructions to the jury; and the efficacy of the State's Notice of Intent to Seek Enhanced Punishment. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and NORMA McGEE OGLE, J., joined.

Greg Eichelman, Morristown, Tennessee, for the appellant, James C. McFall.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; C. Berkeley Bell, District Attorney General, and Douglas Godbee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant lives in a mobile home park off of Little Springs Road, a county road. The drive leading through the park is on private property. The State and the Defendant stipulated that the Defendant's status as a motor vehicle habitual offender was in effect on March 28, 2001.

Jeff and Patricia Richards lived in the first mobile home in the park; Patricia's brother Andrew Jackson Wallace was visiting them on the day in question. Each of these witnesses testified that, on March 28, 2001, they saw the Defendant drive down the park lane to the intersection with Little Springs Road, continue onto Little Springs Road, drive around a curve, and then drive back into the park a short time later. Immediately thereafter, these witnesses saw the police enter the park.

Sgt. Martin Taylor testified that he drove into the park and found the Defendant sitting in the driver's seat of a car in the driveway of the Defendant's residence, attempting to back up. Sgt. Martin approached the Defendant and told him to stop the engine. Sgt. Martin then asked for the Defendant's driver's license, but the Defendant did not produce one. Sgt. Martin testified that the Defendant was so intoxicated that he "couldn't even stand up by himself."

The Defendant testified, adamantly denying having driven on the day in question. He stated that he was sitting in his living room watching television when the police arrived. He also denied having been drunk, but did admit that he had been drinking beer in his home.

## SUFFICIENCY OF INDICTMENT

We first address the Defendant's contention that the indictment in this case is fatally flawed. In pertinent part, the indictment states that the Defendant,

> on or about March 28, 2001, in [Hawkins County, Tennessee] . . . did unlawfully commit the offense of violation of the habitual motor vehicle offender act by operating a motor vehicle in the State of Tennessee while an order of the Criminal Court of the Sixth Judicial District of the State of Tennessee prohibiting the defendant from operating a motor vehicle remains in effect; a Class E felony in violation of T.C.A. 55-10-616 . . . .

The Defendant contends that the indictment does not charge an essential element of the offense: that he was driving on public roads.

We respectfully disagree with the Defendant's contention. The statute which creates the crime of driving while a motor vehicle habitual offender order is in effect states, in pertinent part, "[a]ny person found to be an habitual offender under the provisions of this part who thereafter is convicted of operating a motor vehicle in this state while the judgment or order of the court prohibiting such operation is in effect commits a Class E felony." Tenn. Code Ann. § 55-10-616(b). The statute makes no reference to the status of the property upon which the accused is found operating a motor vehicle, other than that it be within the borders of Tennessee.

In State v. Hammonds, our supreme court recently reiterated that, "[u]nder both the United States and the Tennessee Constitutions, a charging instrument, such as an indictment, must inform the accused of 'the nature and cause of the accusation.'" 30 S.W.3d 294, 297 (Tenn. 2000). Our criminal code further directs that an indictment

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

Tenn. Code Ann. § 40-13-202. An indictment is constitutionally adequate if it contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (2) protect the accused from a subsequent prosecution for the same offense. See State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). An indictment which references the statute defining the offense and uses its language is generally sufficient. See Hammonds, 30 S.W.3d at 300; Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998). Where an indictment is sufficient, a defendant should move for a bill of particulars if he or she desires additional information about the nature of the alleged conduct. See Hammonds, 30 S.W.3d at 303.

Applying these principles to the case before us, it is clear that the indictment against the Defendant is sufficient. It contains allegations notifying the Defendant of the date on which the alleged conduct occurred, the county in which it allegedly occurred, and the nature of the offense: that the Defendant operated a motor vehicle while a court order prohibiting such operation was in effect. The precise location and ownership status of the property where the Defendant allegedly operated the motor vehicle was not information necessary for the Defendant to understand the accusation made against him. Nor was it necessary for the trial court to enter a proper judgment, or to protect the Defendant from a subsequent prosecution for the same offense. Accordingly, the indictment satisfied constitutional and statutory requirements, and this issue is therefore without merit.

### SUFFICIENCY OF EVIDENCE

We next address the Defendant's contention that the evidence is not sufficient to support his conviction. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts.

See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

As noted above, the offense of which the Defendant was convicted is committed when a motor vehicle habitual offender operates a motor vehicle in Tennessee while a court order prohibiting such operation is in effect. The Defendant stipulated that his status as a motor vehicle habitual offender was in effect on the date in question. Three eyewitnesses testified that they saw the Defendant drive a car down the park lane and onto a public street, returning a short time later. A police officer testified that he found the Defendant behind the wheel of a car, attempting to back it out of his driveway. The Defendant claimed that he had not driven any car that day. Clearly, the jury accredited the testimony of the State's witnesses and determined that the Defendant had driven in violation of the court's order. The evidence upon which the jury based its verdict is more than sufficient to support the Defendant's conviction, and this issue is therefore without merit.

**JURY INSTRUCTIONS**

The Defendant complains about the trial court's instructions to the jury concerning the elements of the crime of which he was convicted. The Defendant requested the trial court to charge the jury with the text of the statute that deals with the designation of a driver as a motor vehicle habitual offender, to wit:

> If the court finds that the defendant is not an habitual offender, the proceeding shall be dismissed, but if the court finds that such defendant is an habitual offender, the court shall make an order directing that such person shall not operate a motor vehicle on the highways of this state and that such person shall surrender to the court all licenses to operate a motor vehicle upon the highways of this state.

Tenn. Code Ann. §55-10-613(a) (emphasis added). The Defendant's motive in requesting this instruction was to ensure that the jury considered only the proof regarding his driving on Little Springs Road, and not the proof about his driving while in the mobile home park.

The trial court not only denied the Defendant's request, but instructed the jury about the elements of the crime as follows:

> Any person who drives a vehicle in violation of the motor vehicle habitual offender act is guilty of a crime. For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements: one, that the defendant has previously been found by a Tennessee Court to be an habitual motor vehicle offender under the provisions of the motor vehicle offender [sic] habitual offender act; and, two, that while the Court order continued in effect, the defendant operated a motor vehicle on the public roads or highways or the premises of a

-4-

> trailer park or any premises which are generally frequented by the
> public at large of this state.

(emphasis added). In so instructing the jury, the trial court borrowed language from the DUI statute. See Tenn. Code Ann. §55-10-401(a). The Defendant contends that the trial court's instruction is reversible error.

We first note that a trial court must "give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). A jury charge contains prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). However, jury instructions must be reviewed in the context of the overall charge rather than in isolation. See id. "Erroneous jury instructions require a reversal unless the error is harmless beyond a reasonable doubt." State v. Clifford Coleman, No. M2000-01916-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 84, at *19 (Nashville, Jan. 31, 2002) (citing Welch v. State, 836 S.W.2d 586 (Tenn. Crim. App. 1992).

We agree with the Defendant that the trial court erred in instructing the jury that the offense could be committed by driving on the premises of a trailer park or other premises frequented by the public. Nothing in the motor vehicle habitual offender act makes reference to this language. Moreover, the Tennessee Pattern Jury Instruction for violation of the Motor Vehicle Habitual Offender Act is as follows:

> Any person who drives a vehicle in violation of the Motor
> Vehicle Habitual Offender Act is guilty of a crime.
>
> For you to find the defendant guilty of this offense, the state
> must have proven beyond a reasonable doubt the existence of the
> following essential elements:
>
> > (1)    that the defendant has previously been found by a
> >        Tennessee court to be an habitual offender under the
> >        provisions of the Motor Vehicle Habitual Offender
> >        Act;
> >
> >                          and
> >
> > (2)    that while the court order continued in effect, the
> >        defendant operated a motor vehicle on the public
> >        roads or highways of this state.
>
> An order declaring a person to be an habitual motor vehicle
> offender remains in effect until such time as that person successfully
> petitions a court of competent jurisdiction to restore his or her driving
> privileges.

T.P.I.--Crim. 38.11 (footnotes omitted). We note further, however, that the term "highway" is defined as "the entire width between the boundary lines of <u>every way when any part thereto is open to the use of the public for purposes of vehicular travel</u>." Tenn. Code Ann. §55-8-101(22) (emphasis added). Patricia Richards and Andrew Wallace both testified about the lane through the park being traveled on by a dump truck. Ms. Richard's sister-in-law also drove into the park on the lane to ask her brother a question, and then left. The clear inference from this evidence is that, although the mobile home park was stipulated to be private property, the lane serving the mobile homes also operated as a "highway," according to the statutory definition of a "highway."

We note the inconsistency between the statute that creates the status of motor vehicle habitual offender, and the statute that creates the crime of driving while a motor vehicle habitual offender. The former statute refers to operating a motor vehicle on "the highways of this state." <u>Id.</u> §55-10-613(a). The latter statute refers to "operating a motor vehicle in this state." <u>Id.</u> §55-10-616(b). However, as recognized by the State in its brief, one of the stated purposes of the Motor Vehicle Habitual Offender Act is to "[d]eny the privilege of operating motor vehicles on [the public highways of the state] to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of the state." <u>Id.</u> § 55-10-602(2). Accordingly, we think that a proper jury charge should reference the term "highway" and include the definition of that term; the charge should not, however, include the language from the DUI statute.

Nevertheless, we think the trial court's error in this regard is harmless beyond a reasonable doubt. All of the testimony concerning the Defendant actually driving a car, as opposed to attempting to back it out of his driveway, placed the Defendant on Little Springs Road, a public roadway. Although the jury was charged with attempted violation of the habitual motor vehicle act, the jury rejected this offense and convicted the Defendant of actually driving while a motor vehicle habitual offender order was in effect. Clearly, the jury accredited the testimony of the three witnesses who testified that they saw the Defendant drive out of the mobile home park onto Little Springs Road, and then return a short time later. Accordingly, we find that the trial court's error was harmless beyond a reasonable doubt, and this issue is therefore without merit.

### EFFICACY OF STATE'S PLEADING

Finally, the Defendant contends that the State's Notice of Intent to Seek Enhanced Punishment should have been set aside because it misstated the classes of the referenced felonies. The Defendant concedes, however, that defense counsel "was able to discern the felonies" being relied upon by the State to seek enhanced punishment. Accordingly, the Defendant suffered no prejudice from the error in the Notice, and this issue is therefore without merit. <u>See</u> <u>State v. Debro</u>, 787 S.W.2d 932, 934 (Tenn. Crim. App. 1989) (holding that the defendant must show prejudice arising from a defect in a notice of intent to seek enhanced punishment for a grant of relief).

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE